## COMMONWEALTH *v.* CLARKSON.

Where an estimate, certified by the engineer who made it, was presented to the superin-
tendent of the Gettysburg Extension of the Pennsylvania Railway, it became his duty
as the disbursing officer to pay it. He had no right or power to control the engineer;
nor could he inquire into the propriety of the *data* upon which the calculations were
made.

The duty of the superintendent, as an intermediate, is ministerial, and having no
power to withhold payment, the estimate was a voucher for disbursement, which
must be allowed.

ERROR to the Common Pleas of Dauphin county.

*June* 23. This was an appeal to the Court of Common Pleas of
Dauphin county, by Michael C. Clarkson, late superintendent of the
Gettysburg Extension of the Pennsylvania Railway, the defendant
in error and defendant below, from the settlement of his account
with the Commonwealth of Pennsylvania, the plaintiff in error and
plaintiff below, made by the auditor general and state treasurer,
on the 10th day of September, 1839. On the 8th of November,
1836, an article of agreement was entered into between the Com-
monwealth of Pennsylvania, by Samuel Fahnestock, superintendent
of the Gettysburg Extension of the Pennsylvania Railway, of the
one part, and William E. Camp, of the other part. Under this con-
tract, Camp agreed and undertook to grade section No. 20 of the
eastern division of the said railway, according to the plan and spe-
cifications of John P. Barclay, engineer, and to such directions as
should from time to time be given by the engineer, or assistant en-
gineer having charge thereof, at certain specified prices for different
enumerated kinds of work. *For solid, or blast work, he was to re-
ceive fifty-nine cents per cubic yard.*

Under the said articles of agreement, the payments for work were
to be made in the following manner :

" On or about the first day of December, next ensuing the date
of this contract, the engineer shall estimate the quantity of work
done, and upon his certificate being presented to the superintend-
ent, four-fifths of the amount thereof shall be paid ; and on or
about the first day of each succeeding month, within the limits of
this contract, the like estimate shall be made, certificate granted,
and payment in like proportion made thereon ; and further, at the
expiration of the stipulated period for the completion of this con-
tract, if the whole work shall be finished to the satisfaction of the

2 A

said engineer, he shall estimate it; and within twenty days after the presentation of his certificate to the superintendent, the balance which may remain due shall be paid.   It is further understood, that the superintendent, with consent of the board of canal commissioners, shall pay the said contractor from time to time, such proportions of the retained per centage as he may deem proper."

Camp further agreed, that he would, from time to time, during the progress of the work, conform to such alterations in the location, construction, and dimensions of the *section*, as the engineer might direct. It was also mutually agreed, that any items of work that might occur on the *section*, and not specified in the said contract, should be estimated by the engineer, and paid accordingly.

On the 15th of October, 1838, the president of the board of canal commissioners laid before the board the petition of William E. Camp, asking an additional allowance for his solid rock work on section No. 20, of the said Gettysburg Extension ; on account of *change of grade and error in the estimate of rock*. Whereupon, on hearing all the facts, the board *" Resolved, That he be allowed ninety cents for his solid rock on said section ; being all which they deem proper to allow, although they are aware that this sum will not pay him for his work ; and the engineer is directed to estimate accordingly.    Canal Room,* October 15, 1838."·    Under this resolution, the engineer, W. H. Wilson, made a final estimate of the work on section No. 20, for the contractor, William E. Camp.   In making this estimate, the engineer first estimated *" solid and blast rock"* at *fifty-nine cents per cubic yard,* the price agreed upon in the original contract; and then added thereto the sum of $11,762 64, (the amount in controversy,) for *"* extra allowance on 37,944 cubic yards of solid rock excavation, at *thirty-one cents* per yard, *" on account of change of grade and error in original estimated quantity of rock, &c. ; in accordance with a resolution of the board of canal commissioners, dated October* 15*th,* 1838." To this final estimate, which was dated January 19, 1839, and addressed to Michael C. Clarkson, Esq., superintendent of the Gettysburg Extension Pennsylvania Railway, was appended the following certificate of the engineer, W. H. Wilson:

"I certify, that the above is a correct return of work done by William E. Camp, contractor for section No. 20; and that the work has been completed acccording to contract."

In pursuance of this final estimate and certificate of the engineer, the superintendent paid over the said sum of $11,762 64, to the contractor, William E. Camp, and took his receipt for the same.

The auditor-general and state treasurer settled the account of the defendant on the 10th of September, 1839. And believing this sum of $11,762 64, to be an extra allowance for the performance of the contract beyond the sum stipulated, and consequently contrary to the express provisions of the fifth section of the act of 26th February, 1826, and not therefore due under the contract; and that the superintendent had no authority to pay it; they therefore refused to allow him a credit for the payment thereof on the settlement of his own account, and reported it as a balance against him.

From this settlement of his account the defendant appealed, and filed his appeal accompanied with a specification of his objections to the same, in the office of the auditor-general, pursuant to the act of the 30th of March, 1811, sec. 11.

Defendant's specification of objection to settlement.—"The defendant contests the above-mentioned settlement, because he believes, that that settlement was illegal, improper, inasmuch as the same was an *ex parte* settlement on the part of the accountant officers of the Commonwealth, done and made in the absence of the defendant, without any notice or order to the defendant to appear before the auditor-general to render to him defendant's account, or to produce any and all vouchers in his possession, or testimony of witnesses relative thereto. And because the accountant officers of the Commonwealth refused to allow a credit to the defendant of the sum of eleven thousand seven hundred and sixty-two dollars and sixty-four cents, [$11,762 64;] being one of the items certified to be due to William E. Camp, in the final estimate of section 20 of the Gettysburg Extension Pennsylvania Railway, on the 19th of January, 1839, by W. H. Wilson, engineer; which said sum was paid to the said William E. Camp by the defendant, on the 21st of January, 1839."

The court below (ELDRED, President) instructed the jury, that the payment by the defendant of $11,762 64 to Camp, the contractor, was properly made; and that he was entitled to a credit for such payment, from the Commonwealth.

To this charge, the counsel for the Commonwealth excepted.

The jury found a verdict for the sum of $349 50, in favour of the plaintiff. The plaintiff thereupon removed the record to this court by writ of error; and assigned the instruction of the court below to the jury, for error.

*Boas* and *McCormick*, for plaintiff in error, contended, 1. That the estimate was made contrary to law; that Camp should have availed

himself of the 4th section of the act of 6th April, 1830, which was not done in this case.

2. That the canal commissioners, in allowing Camp the sum of $11,762 64, transcended their authority; it being in violation of the 6th section of the act of 25th February, 1826; therefore Clarkson was not bound to obey the resolution passed by said board, &c.

3. That Clarkson, in giving bond to the Commonwealth for faithfully performing the duties as superintendent, and paying the money so obtained by him, *is amenable to the Commonwealth only*, and not to the board who appointed him; and being the officer under the law to make payment to contractors, it was his duty to know that he was paying under the law, &c.

4. That as Clarkson had taken an oath to support the Constitution of Pennsylvania, of the United States, and the canal law, and knowing that his account must be settled with the auditor-general and state treasurer; it was his duty to inquire and ascertain whether Camp was legally entitled to receive the sum of $11,762 64, or not.

5. That having paid said sum to Camp, contrary to and in violation of "the 4th section of the act of 6th April, 1830," and which embraced in the contract between Fahnestock and Camp, it was a mispayment, made in his own wrong; and he therefore must either lose it or resort to the estate of Camp for it.

The sixth section of the act of 6th of April, 1826, already cited, provides, that "no extra allowance shall in any case be made for the performance of any contract, beyond the sum stipulated therein."

*Cooper* and *Fisher*, for defendant in error.—1. The sixth section of the act of 25th of February, 1826, is not in force. But if it be, the prohibition against making extra allowances, is addressed to the acting canal commissioners, and not to the board proper. The acting canal commissioners were the originals of the superintendents. By the act of the 6th of April, 1830, the office of acting canal commissioner was abolished, and the office of superintendent created. The latter became the successor of the former, in duty and in office. The board proper have power to do all that was done here, under the fourth section of the last-mentioned act.

2. If the prohibition contained in the sixth section of the act of 25th of February, 1826, against extra allowances, be in force, and extend to the board proper, this case does not fall within the prohibition. The allowance here is not an extra allowance for work done under the original contract. What is called an *extra allowance*, is but pay for

*extra work*, occasioned by "change of grade, and for errors in former estimates."

3. But if the prohibition against extra allowances be still in force; if it extend to the board proper, as well as to the more acting members of the board; and the allowance which is the subject matter of dispute be an extra allowance, within the meaning of the act, instead of pay for extra work; still the defendant is protected by the authority and order of his superiors under which he acted. By the very terms of his contract, he was obliged to pay the amount of the estimates made and certified to him by the engineer. He could not look behind the certificate of the engineer. To hold the defendant responsible for acting in obedience to the commands of his superiors, would be repugnant to the principles of justice and sound policy.

*June* 27. PER CURIAM.—Whether the canal commissioners had authority to direct the engineer to make an allowance to the contractor beyond the terms of his agreement, it is unnecessary to decide.

When an estimate was presented to the superintendent, it was his duty as the disbursing officer to pay it. He had no right or power to control the engineer, who was not his subordinate in regard to the estimates. Nor could he inquire into the propriety of the *data* from which they were calculated.

Even if the engineer might have disregarded the order of the board, it is enough for the superintendent that he did not disregard it; and it was the duty of the commissioners to see that the superintendent paid the estimate when certified and presented, or to remove him if he did not. His duty as an intermediate was a ministerial one; and the maxim *respondeat superior*, is applicable to him. Having had no power to withhold payment, therefore the estimate is a vouchee for disbursement, which ought to have been allowed.

Judgment affirmed.